# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-02892-DME-KLM

KEVIN and LISA MCGLOTHLEN,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

      Defendant.

---

## ORDER GRANTING SUMMARY JUDGMENT

---

This matter is before the court on a motion for summary judgment made by Defendant American Family Mutual Insurance Company ("American Family").  (Doc. 21.)  Upon consideration of the parties' pleadings addressing this motion, the Court GRANTS in full American Family's motion for summary judgment.

## BACKGROUND

Plaintiffs Kevin and Lisa McGlothlen ("McGlothlens") allege that their home was damaged by a hail storm that occurred June 27, 2010.  On or about December 13, 2010, the McGlothlens reported to American Family a claim for alleged damage sustained by the roof of their property during the hail storm.

A few days later, Dustin Theriault, a property claims adjuster for American Family, inspected the home.  He completed an estimate for the water damage to the interior of the home, which provided a settlement for the claim, and contacted Western

Inspections and Consultants, Inc. ("Western") to inspect the alleged damage to the McGlothlens' roof.  Following the inspection, Western's report to American Family noted that there was no evidence of hail or wind damage to the roof.  Accordingly, in January 2011, Mr. Theriault sent letters to the McGlothlens denying the claim for roof damage[1] and informing the McGlothlens that if they were not satisfied, within twenty days, they could commence the appraisal process provided for in their insurance contract.

The McGlothlens did not pursue appraisal.  Instead, on October 17, 2011, the McGlothlens filed a complaint and jury demand ("Complaint") (Doc. 2) against American Family, which asserted claims for breach of contract and violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.[2]  Subsequently, American Family filed its motion for summary judgment.  (Doc. 21.)

This Court has jurisdiction to consider this matter under 28 U.S.C. § 1332.  Venue is proper pursuant to Colo. R. Civ. P. 98(c).  As explained below, because there are no genuine disputes of material fact and American Family is entitled to summary judgment

---

[1] In a subsequent letter that Mr. Theriault sent to the public adjustor retained by the McGlothlens, Mr. Theriault explained that he "denied the roof portion" of the claim "for normal wear and tear," because "the roof did not show any signs of storm related damage," and "wear and tear damage is not covered under the policy." (Doc. 21, Ex. I.) But he explained that he "did cover the resulting water damage from the roof leak," because that loss was "covered under the policy." (Id.)

[2] In their Complaint, the McGlothlens also asserted against American Family a common law claim of bad faith.  But in their response to American Family's motion for summary judgment, the McGlothlens stated that they would not oppose summary judgment as to this claim.  Thus, the Court GRANTS summary judgment to American Family on the common law claim for bad faith.

as a matter of law, the Court GRANTS summary judgment to American Family on all of the McGlothlens' claims.

## ANALYSIS

To obtain summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "At summary judgment, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Simpson v. Univ. of Colo. Boulder, 500 F.3d 1170, 1179 (10th Cir. 2007) (internal quotation marks omitted).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). And "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Id. "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Id. Where "the movant carries this initial burden . . . the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Id. (internal quotation marks omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id.

3

I.      **The Court Grants American Family's Request for Summary Judgment as to the McGlothlens' Claim for Breach of Contract**

In its motion for summary judgment, American Family argues that the McGlothlens' claim for breach of contract must fail because the McGlothlens did not file this lawsuit within the one-year time limit required by the insurance contract.[3] Specifically, the provision at issue states: "Suit must be brought within one year after the loss or damage occurs."

Colorado courts[4] have held that "parties to a contract may require that actions founded on the contract be commenced within a shorter period of time than that prescribed by the applicable statute of limitations." Grant Family Farms, Inc. v. Colo. Farm Bureau Mut. Ins. Co., 155 P.3d 537, 539 (Colo. App. 2006); see also, e.g., Hepp v. United Airlines, Inc., 540 P.2d 1141, 1143 (Colo. App. 1975) (explaining that "[i]n Colorado such a contractual limitation is enforceable, provided that the period in which the action must be brought is reasonable and that the provision has not been waived."); Kesling v. Am. Family Mut. Ins. Co., 861 F. Supp. 2d 1274, 1281 (D. Colo. 2012)

---

[3] American Family also claims that the contractual time limit bars the McGlothlens' statutory claims. Because American Family is entitled to summary judgment on the statutory claims on other grounds, as discussed below, the Court need not consider this argument.

[4] Because this is a diversity action, the Court will "apply the substantive law of the forum state, including its choice of law rules." Berry & Murphy, P.C. v. Carolina Cas. Ins. Co., 586 F.3d 803, 808 (10th Cir. 2009) (internal quotation marks omitted). "Under Colorado choice-of-law rules, an insurance contract is governed by the law of the state with the most significant relationship to the insurance contract." Id. In this case, the parties agree that Colorado law applies.

(holding that an insurance contract's one-year contractual time limit for commencing litigation is not contrary to Colorado law).

In this case, the McGlothlens do not argue that the contractual time limit is unenforceable. Instead, the McGlothlens argue that they commenced their lawsuit against American Family within the contractual time limit because they commenced litigation within one year from discovering the damage to the roof. As discussed below, regardless of whether the contractual time limit at issue applies from the time the loss or damage occurred or from the time the McGlothlens discovered the damage, the McGlothlens commenced litigation outside of the permissible timeframe and their claim for breach of contract is therefore barred.

## A. There is No Genuine Dispute that the McGlothlens Failed to Bring their Lawsuit Within One Year after the Loss or Damage Occurred

The plain, unambiguous language of the insurance contract between American Family and the McGlothlens states that a lawsuit against American Family "must be brought within one year after the loss or damage <u>occurs</u>." (Doc. 21 at 7 (emphasis added).) There is no genuine dispute that the loss or damage actually occurred on or about June 27, 2010. Indeed, in their Complaint, the McGlothlens allege that "[o]n about June 27, 2010, Denver, Colorado was hit by a severe storm," and "[a]s a result of the storm, MCGLOTHLENS sustained severe damage to their residence." (Doc. 2 at 1.) The Complaint also states that "[t]he McGlothlen home was severely damaged by a devastating hail storm occurring June 27, 2010." (<u>Id.</u>).

In accordance with these allegations in the complaint, when Mr. McGlothlen was asked in his deposition about when the storm had occurred, Mr. McGlothlen indicated that June 27 was "sincerely a best guess as to the exact night of the storm." (Doc. 21 at Ex. O at 34:12-25.)  When asked again later in the deposition, "If you don't know for sure when the exact loss was, was it in . . . June or July of 2010? Can you at least state that it was around that time period?," Mr. McGlothlen responded that "[i]t was that weekend of late June."  (Id. at 81:7-11.)

Additionally, in the contract Mr. McGlothlen signed to retain a public adjuster in this matter, Mr. McGlothlen indicated a date of loss "on or about 6/27/10." (Doc. 21, Ex. M.)  Similarly, when the McGlothlens reported the claim to American Family, American Family recorded the date of loss as June 27, 2010, and the paperwork from American Family denying the claim also lists June 27, 2010 as the date of loss.

Accordingly, there is no genuine dispute that the loss or damage actually occurred on or about June 27, 2010, which was more than a year before the McGlothlens commenced their lawsuit on October 17, 2011.  Thus, under the plain language of the contract, the McGlothlens are barred for bringing their breach-of-contract claim.

**B. There is No Genuine Dispute that the McGlothens Failed to Bring their Lawsuit Within One Year after They Discovered that the Loss or Damage Occurred**

The McGlothlens argue that their claim is not barred by the contractual time limit provision because they commenced litigation within one year of discovering the damage. The plain language of the contract does not reference discovery of the damage.  But even

if the contract were interpreted to require the McGlothlens to bring their lawsuit against American Family within one year from when they discovered the damage, for the following three reasons, there is no genuine dispute that the McGlothens failed to commence their lawsuit within that timeframe.

First, during Mr. McGlothen's deposition, he testified that the McGlothlens noticed the damage in the days following the storm.  Specifically, he explained that after the storm that occurred on June 27, 2010, "we noted the internal water damage to the house, which is when we realized it was a pretty big storm."  (Doc. 21, Ex. O at 26:6-8).  Mr. McGlothlen was then asked when he noticed internal water damage.  He replied, "It came on over the days following the storm, because we'd just recently repaired and repainted the area from prior damage."  (Id. at 26:9-13 (emphasis added).)  Mr. McGlothen was asked "So if the hailstorm occurred June 27, 2010, you would have noticed the leaking maybe June 28, 29, 30?"  (Id. at 26:14-16.)  Mr. McGlothen responded, "It's hard to say. . . . I don't honestly know whether it was the next day or a couple days later when we see [sic] the internal damage and pointed out, hey, there's -- there's problems from the roof again."  (Id. at 26:17-24 (emphases added).)

Moreover, when asked why it took him so long to file an insurance claim with American Family, Mr. McGlothlen did not testify that he could not make a claim because he had no knowledge of the damage.  Instead, he provided other reasons for the delay; reasons that do not conflict with his testimony that the McGlothlens noticed internal water damage in the days following the storm. Specifically, he testified that the reason it

7

had taken several months to file the claim "gets into a little bit more family dynamics

. . . . I was asking [Mrs. McGlothlen] if she would <u>re-paint the areas that had been</u>

<u>damaged</u>, and she told me that <u>she was not going to keep fixing that</u> until I got the roof

fixed." (<u>Id.</u> at 32:1-4, 12-16 (emphases added).)

When asked if there was anything beyond family dynamics that resulted in the

delay in reporting the claim, Mr. McGlothlen said that "in addition to the concerns of

ongoing damage to the house, it became evident that our neighbors had suffered the same

thing, and this wasn't just our house." (<u>Id.</u> at 32:24-25, 33:1-5.)  He also mentioned that

he was "unhappy with the response I got from American Family one year earlier, when I

reported [another] loss [occurring] in June of 2009[, a]nd until I started to see my various

neighbors all getting new roofs from the same season of storms, <u>I was just sort of taking</u>

<u>it in stride</u>." (<u>Id.</u> at 32:18-24. (emphasis added).)  Mr. McGlothlen's deposition testimony

establishes that the McGlothlens were aware of the alleged damage in the days following

the storm, but delayed filing an insurance claim until December for other reasons.

Second, the McGlothlens had the roof inspected and began laying groundwork for

repairs in the summer months following the storm—more than a year before they brought

their lawsuit on October 17, 2011.  Indeed, Mr. McGlothlen entered into a "Consultation

and Assistance Agreement" ("Agreement") with Remedy Roofing, Inc. (Remedy

Roofing) on August 25, 2010.[5]  This agreement stated that "<u>Homeowner intends to file a</u>

---

[5] American Family attached to its reply brief the contract between Mr. McGlothlen and
Remedy Roofing; additional pages of Mr. McGlothlen's testimony; and a report done by

claim ('Claim') with Homeowners insurance carrier <u>concerning the roof</u> on the property

identified above (the 'Property')."  (Doc. 32, Ex. R (emphasis added).)  It also states that

> Remedy Roofing, Inc., agrees to provide its representatives to assist
> Homeowner with the Claim. Remedy Roofing, Inc. will evaluate
> Homeowner's roof and meet and consult with adjusters and other
> representatives of Homeowner's insurance carrier as necessary <u>regarding
> the amount of damage to Homeowner's roof</u>, <u>the appropriate replacement
> and the reasonable cost of replacement</u> of Homeowner's roof.

(<u>Id</u>. (emphasis added).)

Moreover, prior to entering into the Agreement with Remedy Roofing, Mr.

McGlothlen testified that people from Home Depot and another company had examined

the roof.  Mr. McGlothlen also stated that at least two other people doing roofing jobs in

the neighborhood approached him to ask if he was interested in a bid, but said that he was

already working with Remedy Roofing by that time.

Third, in his deposition, Mr. McGlothlen testified that he received a report

regarding damage to the roof following an inspection from a company called

A4chitecture, which was working in connection with Remedy Roofing.  This report is

dated September 22, 2010, and indicates that it was emailed to Remedy Roofing on

---

a company called A4rchitecture, which performed an inspection on the roof at the request
of Remedy Roofing.  The McGlothlens never sought leave to file a surreply addressing
this new evidence, although they had ample opportunity to do so.  Thus, in reaching its
decision, the Court will consider the additional exhibits attached to American Family's
reply brief.  <u>Pippin v. Burlington Res. Oil & Co.</u>, 440 F.3d 1186, 1191-92 (10th Cir.
2006) (concluding that the district court had not abused its discretion by permitting a
movant to attach new exhibits to a summary judgment reply brief when the nonmovant
"had plenty of opportunity to seek leave of the court to file a surreply but never attempted
to do so").

September 30, 2010.  Mr. McGlothlen testified that Remedy Roofing emailed the report

to him.  Among other things, the report states that the "roof does show signs of damage

from hail, wind and natural exposure," and it "recommends the full replacement of the

entire roof."  (Doc. 32, Ex. S at 4.)  This report is another indication that the McGlothlens

discovered the damage more than a year prior to the time they commenced litigation.  See

Kesling, 861 F. Supp. 2d at 1281 (explaining that a contractual time limit began to run as

of the date plaintiffs received an engineering report on the damage to their deck).

Although the McGlothlens attempt to create a factual dispute by pointing to some

testimony indicating that the McGlothlens did not discover the damage until December

2010,[6] the evidence that the McGlothlens discovered the damage more than one year

---

[6] For instance, the McGlothlens point to Mrs. McGlothlen's testimony that she
thought they had filed their insurance claim "later than the incident, because we weren't
aware of hail damage until we had subsequent damage to the home," (Doc. 26, Ex. 1 at
14:17-19) and that "we started noticing water damage in my daughter's closet and in our
bathroom, and it was the same areas that we had had damage from the prior claim[, s]o
we asked American Family to come out and take a look at the roof again, once we
noticed the internal damage" (Doc. 26, Ex. 1 at 15:1-6). But in her deposition, Mrs.
McGlothlen does not state that they discovered this "subsequent damage" and "water
leakage" in December 2010 or that they immediately called American Family to file the
claim "once [they] noticed the internal damage." Even viewing the facts and inferences in
the light most favorable to the McGlothlens, Mrs. McGlothlen's vague testimony is
insufficient to create a factual dispute in light of the ample evidence that the McGlothlens
became aware of the alleged damage to the roof shortly after the storm occurred.
The McGlothlens also point to deposition testimony and statements in an affidavit
from American Family's adjuster, Dustin Theriault, indicating that, based on his
recollection of his communications with Mr. McGlothlen when the insurance claim was
filed, the McGlothlens discovered the internal water damage around the time that they
filed the claim in December 2010.  Mr. Theriault's recollection of what Mr. McGlothlen
represented to him at the time the claim was filed is insufficient to create a genuine

prior to commencing litigation is "so one-sided" that American Family must prevail as a matter of law.  Simpson, 500 F.3d at 1179.

In sum, the plain language of the contract requires a lawsuit against American Family to be commenced within one year of the date the "loss or damage occur[red]." (Doc. 21 at 7.)  The roof was allegedly damaged by a storm that occurred on or about June 27, 2010, and the McGlothlens failed to commence litigation within one year of this date.  Moreover, even under the McGlothlens' interpretation—reading the time limit to commence when the damage was discovered rather than when it was sustained—the evidence demonstrates that the McGlothlens did not commence their lawsuit within one year from discovering the damage. Thus, there is no genuine dispute that the McGlothlens failed to commence litigation within the time limit required by the insurance contract; accordingly, American Family is entitled to summary judgment on the breach-of-contract claim.

## II.     The Court Grants American Family's Request for Summary Judgment on the McGlothlens' Statutory Bad Faith Claim

Under Colorado statute, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of a first-party claimant."  Colo. Rev. Stat. § 10-3-1115(1)(a).  Similarly, Colo. Rev. Stat. § 10-3-1116 states that "[a] first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been

---

factual dispute in light of the contrary deposition testimony of Mr. McGlothlen, and the ample evidence corroborating Mr. McGlothlen's deposition testimony.

unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." Colo. Rev. Stat. § 10-3-1116(1).  An insurer's delay is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit <u>without a reasonable basis</u> for that action." <u>Id.</u> § 10-3-1115(2) (emphasis added).

In this case, the undisputed facts demonstrate that American Family did not unreasonably deny or delay payment of any benefits owed to the McGlothlens for the alleged damage to their roof.[7]  Indeed, American Family <u>had</u> a reasonable basis to deny the insurance claim—Western's report that there was no evidence of hail or wind damage to the roof.  And the McGlothlens never provided American Family with a reason to question its decision to deny the claim based on Western's report—the McGlothlens did not commence the appraisal process or provided American Family with contrary evaluations and estimates of the alleged roof damage.  Additionally, no court or arbitrator ever determined the actual value of the claim, if any.[8]  Thus, the McGlothlens have not

---

[7] The Colorado Court of Appeals has found that the amount owed on an insurance claim is fairly debatable when "the parties disagreed over the value of . . . [the] damages" at issue and "[t]he actual value of the claim had not yet been determined by an arbitrator or court." <u>Alarcon v. American Family</u>, No. 10CA1786, slip op. at 8 (Colo. App. Sept. 8, 2011) (unpublished).  Although not determinative, "whether an insured's claim is 'fairly debatable is a useful factor to assist in determining whether the insurer's conduct was unreasonable" under Colo. Rev. Stat. § 10-3-1115.  <u>Id.</u> at 7.

[8] American Family argues that it could not have violated § 10-3-1115 because there were no "benefits owed" until a settlement or court determination. The Court need not address that issue because, regardless of whether or not American Family owed benefits to the McGlothlens, it did not deny or delay payment of any such benefits without a reasonable basis.

put forth any facts that show American Family denied or delayed the claim without a

reasonable basis.  Accordingly, there is no genuine dispute of material fact regarding this

issue and American Family is entitled to summary judgment as a matter of law.

## CONCLUSION

Viewing the facts and inferences in the light most favorable to the McGlothlens,

this Court has determined that there is no genuine dispute of material fact that would

preclude summary judgment for American Family on all of the McGlothlens' claims.

Accordingly, this Court GRANTS summary judgment to American Family.


IT IS THEREFORE ORDERED THAT:


1.  Defendant's Motion for Summary Judgment (Doc. 21) is GRANTED in full.


As this Order ends the litigation in this proceeding, the Court directs the Clerk to enter

judgment accordingly.

Dated this ___24th___ day of _____April___, 2013.

BY THE COURT:

*s/ David M. Ebel*
_____
U. S. CIRCUIT COURT JUDGE